## RUCKMAN *vs.* PITCHER.

Where a person stakes upon an illegal wager, money belonging to himself and others, in an action against the stakeholder to recover the money deposited, he can only recover back the amount contributed by himself.

Each person who contributes money to the stakes, must sue for the same; and he alone can recover it back.

In such an action the plaintiff is entitled to interest, from the commencement of the suit; not as interest for the use of the money, but as damages for the detention.

THIS was a motion by the defendant for a new trial, upon a bill of exceptions taken at the second trial of the cause, before the Hon. H. P. Edwards, at the New-York circuit in November, 1850. The facts are fully stated in the report of the case in the court of appeals, on error to the supreme court, after the first trial. (1 *Comst.* 392.) The evidence was substantially the same as on the former trial. The judge, among other things, charged the jury that the plaintiff, if entitled to recover at all, was entitled to recover the whole sum which was paid or deposited by him with the defendant upon the wager, notwithstanding other persons might have been interested in portions of the money so paid or deposited by the plaintiff; to which charge the counsel for the defendant excepted. The judge further charged the jury that there were three questions for their consideration: first, was there a wager made upon the event of this race? secondly, was the money upon that wager put up by the plaintiff? and thirdly, was the money so put up, paid over by the defendant, and if so, in what manner? That, as to the first question, it appeared by the evidence that such a wager was made, and there was no controversy between the parties in respect to that fact; it also appeared that the defendant held a sum of money as a stake, dependent upon the result of that race, and the jury were to determine whether $3000 of the money so held by the defendant, was paid, delivered, or deposited with him for that purpose, by the plaintiff. That in respect to the question as to the payment over of the money by the defendant, the proofs before the jury were substantially the same as those which were given on the former trial of this cause, and

Ruckman v. Pitcher.

upon which the court of appeals had decided that the particular assent to the payment over of the money by the defendant, which was then proved to have been given by the plaintiff, constituted no defense; that the defendant claimed that on this trial he had proved a different case, and one in which the consent to the payment, proved to have been given by the plaintiff, could legally operate as a defense. That the intent of the statute was to suppress gaming in all its forms; that after the wager had been made and lost the plaintiff continued to be the owner of the money deposited by him with the stakeholder, and had the right to call upon the stakeholder to pay it to him, or to direct him as the holder of the plaintiff's money, to pay it over to some other person; but that the plaintiff as loser, could not, after the event had happened, direct the payment of such money to the winner, in pursuance, and in discharge of the wager; that such direction, in pursuance of the original contract, which the statute had declared to be void, would be inoperative; to which last mentioned paragraphs of the charge, the defendant excepted. That the law was, that a person who has lost money upon a wager on a race, may recover it back from the stakeholder, although he has directed the stakeholder after the loss of the race, to pay the money over to the winner, and the stakeholder has complied with such directions. To this portion of the charge, the counsel for the defendant also excepted. The judge further charged the jury, that the statute was not made for the benefit of the depositor, but to prevent the public mischiefs which arise from betting and gaming, and that the rule by which the jury were to be guided in applying the statute to this case, was this: if the money was deposited by the plaintiff with the defendant, in pursuance of the wager which had been made upon the race between Lady Suffolk and Americus, and if the money was paid over by the defendant to Minturn, in execution and in satisfaction and discharge of the wager, the plaintiff was entitled to recover the amount so paid, whether Minturn received it as the sole party interested in the wager, or partly on his own behalf, and partly in behalf of others. The question for the jury was, whether the money was paid over in consummation

of the unlawful contract; whether it was paid as money lost, and received as money won upon a wager. To which portion of the charge the defendant also excepted. His honor the judge further charged the jury, that the plaintiff was entitled to recover interest upon the sum deposited, from the time of the commencement of this suit. To this portion of the charge the counsel for the defendant also excepted.

The jury rendered a verdict for the plaintiff for $3000 debt, with six cents damages and six cents costs.

*A. L. Jordan,* for the plaintiff.

*E. Sandford* and *N. B. Blunt,* for the defendant.

*By the Court,* ROOSEVELT, J. This was the case of a wager on a horse race. The controversy originated more than ten years ago; and, in the long interval, has furnished ample occupation for both bench and bar. It now presents itself in the shape of a motion for a new trial, on the part of the defendant, founded on a bill of exceptions, taken to the judge's charge.

Under that charge the jury found a verdict for the plaintiff for $3000, the whole amount deposited by the plaintiff in the hands of the stakeholder, who was the defendant, although the plaintiff, it appeared, had really contributed only one-fifth; the other four-fifths having been furnished by his associates. If entitled to recover at all, was he entitled to more than the $600? This, although there are several minor points of controversy, is the main, if not the only, question in the case.

The action rests entirely on the statute against gaming. It must find its support there, or nowhere. By the common law, money paid either voluntarily or in the execution of an unlawful contract, cannot be recovered back. It is considered to be against sound policy to allow the time of the courts to be occupied or their aid to be invoked in such controversies. Does the letter of the *statute* then, or its spirit, warrant the plaintiff's claim?

The statute (1 *R. S.* 662, § 8) declares all such wagers to be unlawful, and all contracts for or on account of the money wa-

gered, bet or staked, to be void. Had it stopped here, no action could have been maintained by any of the parties, all being *in pari delicto.* But such an enactment, by itself, would have been wholly insufficient to check the pernicious vice of gaming, or to remedy its ruinous consequences to the loser and his family. The legislature, therefore, went further, and by the 9th section of the same title, provided that any person, who should pay, deliver, or deposit any money, property, or thing in action, upon a prohibited wager, might recover it of the winner, and of the stakeholder, whether paid over or not, and whether the wager were lost or not. Under this provision the plaintiff, although for himself he only bet and deposited $600, seeks to recover, and to retain too, the whole $3000. And if he is right in his construction, the act, while endeavoring to effect the suppression of one vice, will be offering a bounty for the perpetration of another, far more odious, although perhaps not quite so pernicious. In my opinion the legislature intended no such result. The great object, as far as practicable, was to place the parties, and especially the loser, *in statu quo.* He who really paid the money, or delivered the thing to the winner, or deposited the thing or money, with the stakeholder, and not the mere agent or conduit, was to be reinstated in his original possession. He was to be looked upon, in respect to this unfortunate passion, as a minor, under the guardianship of the law, and incapable of giving any binding consent to the disposal of his property. And when such consent was pleaded in answer to his claims, the ministers of the law were to step in and nullify the plea. The interpretation contended for by the plaintiff's counsel would defeat, as I conceive, the leading purpose of the act, the protection of those whose infatuation has deprived them of the faculty of protecting themselves. Instead of restoring his property to the party wronged, it would merely substitute one winner for another —a treacherous or disguised winner for an open manly one—a winner without merit, either in law or honor, for a winner who has at least the rules of the turf and the customs of sportsmen in his favor. And all this is to follow that the letter of the act may be obeyed, which says " the person depositing the money

may sue for and recover the same." But who is the person making a deposit? If I send a child or a servant to the bank, with my pass-book and surplus funds, is it he that makes the deposit, or I? If a merchant, as is the almost universal practice, intrusts this duty to his clerk, which of the two is called the depositor, the clerk or the merchant? All language, even when supposed to be used most literally, proceeds upon the assumption of the great legal maxim, *qui facit per alium, facit per se*—what a man does by another, he does by himself.

I conclude then, as the result of the whole letter, spirit and policy of the act, that each person, whose own money, by his consent and direction, is contributed to the stakes, must "sue for the same," and that he, and he alone, can recover it back.

This disposes of the verdict, and renders a new trial necessary. But there are some minor points on which, as they have been fully argued, it may be as well, in view of future litigation, to express an opinion.

No demand, then, before suit brought, was necessary. The decision in the court of appeals settled that question. It also determined that the payment over by the stakeholder to the winner, although "with the consent or by the order of the loser," did not discharge the stakeholder from his liability. (*Ruckman v. Pitcher*, 1 *Comst.* 392.) There was no color for the pretense that there had been a voluntary *donation* of the money. When handed over to Minturn, the successful party, he received it, obviously, in fulfillment of the wagering agreement, and not as the subject of the plaintiff's bounty. As to interest, the judge, before whom the cause was tried, charged that it accrued and was recoverable from the commencement of the suit. We concur in this opinion, although the jury, it seems, thought otherwise. The statute, it is true, must give the rule; and the "abstract rights and duties of the parties," in the language of the court of appeals, "have nothing to do with the case;" that rule is expressed in the words "may sue for and recover the *same*," namely, "the money paid or deposited," saying nothing about interest. No interest therefore can be recovered as for the use of the money. But does it follow, when the losing party has

signified his determination to enforce the restoration of his property by legal process, that the winner or the stakeholder may hold him at bay, by indefinite litigation, and after a large portion of a lifetime thus consumed, pay no part of the damage occasioned by the detention? Such a rule would, in practice, operate as a partial, and in the present state of the courts in this district, as almost a total repeal of the statute—to say nothing of the bounty it would offer to the indulgence of a spirit of vexatious and distressing litigation.

New trial granted.

[NEW-YORK GENERAL TERM, June 11, 1852. *Edwards, Mitchell* and *Roosevelt,* Justices.]